UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FINANCIAL FEDERAL CREDIT INC.; § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. H-09-997 |
| § | |
| BRUCE E. HARTMANN, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

**I. INTRODUCTION**

Pending before the Court are the plaintiff's, Federal Financial Credit, Inc. ("FFCI"), motion for summary judgment (Dkt. Entry No. 18) and the defendants', Bruce E. Hartmann ("B. Hartmann") and Terry M. Hartmann ("T. Hartmann") (collectively, the "defendants"), motion to dismiss (Dkt. Entry No. 26).[1] After having carefully considered the motion, response, the undisputed facts and the applicable law, the Court determines that FFCI's motion for summary judgment should be **GRANTED**.

**II. FACTUAL BACKGROUND**

FFCI is a commercial finance company specializing in the financing and leasing of equipment for construction, transportation and refuse industries. It provided financing to Mid-States Express, Inc. ("Express")[2] for the purchase of equipment and/or working capital. The defendants guaranteed payment and performance of all of Express' obligations to FFCI. They have since defaulted on their obligations by failing to render timely monthly payments, and FFCI

---

[1] For purposes of this Memorandum Opinion and Order, the Court will treat the defendants' motion to dismiss as their response in opposition to FFCI's motion for summary judgment.
[2] Express filed a petition for bankruptcy under Chapter 11 of the U.S. Bankruptcy Code on March 27, 2009, and as such, is not a party to the instant action.

has commenced the instant action seeking to recover a deficiency that the defendants allegedly owe to it under the parties' agreements.

Specifically, in October of 2007, Express refinanced seventeen outstanding obligations to FFCI, all of which were then in default. To this end, on October 12, 2007, Expressed executed and tendered to FFCI a promissory note in the amount of $7,027,664.00 in exchange for the financing ("the Note"). The Note was to be paid in fifty-six monthly installments, commencing on November 1, 2007, and continuing on the same day of each month thereafter until paid in full. The Note was secured by a concurrently-executed Security Agreement, which granted FFCI a security interest in the equipment described on an attached schedule (the "equipment") as well as a blanket security interest in all of Express' assets (the "collateral"). FFCI timely perfected its security interest in the collateral. The Note and Security Agreement allow for the acceleration of all indebtedness due under the Note in the event of default by Express. A copy of each of the agreements referenced is attached to FFCI's Original Complaint.

On March 1, 1999, and again, on or about September 30, 2005, the defendants, each, executed and tendered to FFCI a continuing guaranty agreement as consideration for FFCI's acceptance and financing of the Note. Aurora Fast Freight, Inc. ("Freight")[3] executed and delivered to FFCI a continuing guaranty on November 14, 2002. The guaranties provide, in relevant parts, the following:

> As a material inducement to [FFCI] to provide one or more loans or other financial accommodations to or for the benefit of [Express], and/or enter into one or more security agreements . . . with [Express], . . . and/or in consideration of your having done any of the following, [the defendants] agree[] to be directly and unconditionally liable to [FFCI] (without reduction by reason of any defense, setoff or counterclaim of [Express]) for the due payment and performance of all Obligations, and any and all future renewals, modifications, amendments, extensions, increases and/or supplements thereof, whether previously, contemporaneously or subsequently created or incurred, and for the due

---

[3] Freight, an Illinois corporation, has failed to file a response to the instant motion and, according to documents obtained from the Illinois Secretary of State, is now a defunct corporation.

> payment and performance of any and all indebtedness and/or obligations of [Express] of whatever kind or character, whether direct or indirect, whether contingent or absolute, whether matured or unmatured and whether now or in the future arising, existing, incurred, contracted or owing to [FFCI] . . . .

(Dkt. Entry 18, Exs. 3 – 7.)

It is undisputed that Express defaulted under the terms of the Note by failing to make monthly payments due December 1, 2008 and thereafter. Upon default, FFCI took possession of the equipment and disposed of each item at seven public sales that were conducted on September 23, 2009, September 24, 2009, September 25, 2009, September 29, 2009, September 30, 2009, October 1, 2009, and October 2, 2009 (the "public sales"). FFCI notified the defendants of the public sales both by certified mail, return receipt requested, and by first class mail, postage prepaid, to their last known addresses. Notices were mailed to B. Hartmann at 540 West Galena Blvd., Aurora, IL, 60506 and 1371 Ken Peddy Ct., Batavia, IL 60510. Notices were mailed to T. Hartmann at 7575 Pelican Bay Blvd. #1403, Naples, FL 34108, 1999 Downer Place, Aurora, IL 60506, c/o Tom Streit, and 540 West Galena Blvd., Aurora, IL, 60506. The notices sent to the Ken Peddy Ct. and Pelican Bay Blvd. addresses, however, were returned unclaimed. Notices of the public sales were also posted in at least nine county publications ten days prior to each sale, from September 17, 2009 to October 5, 2009. Further, FFCI notified other potentially interested parties of the public sales by sending them notice via certified mail, return receipt requested and/or first class mail.

Each public sale was conducted as an auction at 1:00 p.m., at an accessible location. FFCI made the equipment available for inspection several days prior to the public sales. During the course of each sale, the notice was read first, the attendees were asked if they had any questions, bidding was opened and each item of equipment was sold, one at a time. FFCI sold the equipment for an aggregate price of $1,711,250, which it contends was the reasonable market

value for such equipment. FFCI alleges that it has incurred expenses in the amount of $206,826.81 for advertising, preparing for, and conducting the public sales. It further contends that after crediting the proceeds of the public sales and all other sums, an unpaid balance in the amount of $4,012,233.75, plus attorneys' fees, interest and late charges remains due and owing and despite reasonable demand, the defendants have failed and refused to pay the remaining balance. FFCI now moves for summary judgment seeking the difference between the proceeds obtained as a result of the public sales and the remaining amounts due under the Note, plus interest at the rate of eighteen percent per annum, costs, expenses associated with the public sales and attorneys' fees.

### III. CONTENTIONS OF THE PARTIES

#### A. FFCI's Contentions

FFCI contends that because there are no genuine issues of material fact in dispute, summary judgment should be granted in its favor. It contends that the defendants are liable for Express' indebtedness pursuant to the terms of the continuing guaranties. It further contends that proper notice of the public sales was given and every aspect of the sales were commercially reasonable. Accordingly, it argues that it is entitled to judgment as a matter of law with respect to the remaining indebtedness due and owing under the Note, plus interest, costs and reasonable attorneys' fees. Alternatively, it requests that the Court grant it a partial summary judgment and provide it with a list of the material issues of fact that it deems to be disputed.

#### B. The Defendants' Contentions

As an initial matter, the defendants jointly argue that service of process was insufficient in this case and warrants dismissal. Particularly, B. Hartmann swears, pursuant to an un-notarized affidavit filed in support of the defendants' motion to dismiss, that no service was

effected on him or his wife. As such, he argues that FFCI has made no honest attempt to communicate with them. T. Hartmann, on the other hand, argues that he was served approximately seven months after this case was filed. Consequently, he contends that this case should be dismissed due to FFCI's failure to effect service on him within 120 days after its complaint was filed. The defendants also aver that FFCI's disposition of the equipment was not commercially reasonable because the collateral was undersold. Finally, they assert that the guaranty documents were not properly witnessed and that FFCI has failed to follow the Court's orders regarding communication and discovery between the parties. As such, they contend that this Court should dismiss FFCI's action.

## IV. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v.*

*Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus,

"[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52 (1986)).

## V.     DISCUSSION AND ANALYSIS

### A.     Whether Service of Process Was Sufficient?

The defendants claim that this action should be dismissed for improper service of process. T. Hartmann contends that he was served late, and B. Hartmann contends that he was not served at all. Where, as here, when determining whether service of process was proper with respect to individuals within a judicial district of the United States in a diversity action, Fed. R. Civ. P. 4(e) is applicable. Rule 4(e) specifically provides as follows:

> **(e) Serving an Individual Within a Judicial District of the United States.**
> Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by:
>
> **(1)** following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> **(2)** doing any of the following:
>
>> **(A)** delivering a copy of the summons and of the complaint to the individual personally;
>>
>> **(B)** leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> **(C)** delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Rule 4(m) further maintains that if service is not perfected on a defendant within 120 days after the filing of the complaint and there is no showing of good cause for the failure to effect such service, a court is required to either dismiss the action without prejudice or order that service be made within a precise time. *See* Fed. R. Civ. P. 4(m). It is important to recognize that if a proper method of service is followed, due process is satisfied even if it does not result in the defendant receiving actual notice. *McDonald v. Mabee*, 243 U.S. 90, 92, 37 S.Ct. 343, 344 (1917).

In this case, B. Hartmann swears, pursuant to an un-notarized affidavit filed in support of the defendants' motion to dismiss, that no service was made on him or his wife. Contrary to his declaration, however, FFCI filed a "Return of Service" with this Court on May 14, 2009, denoting that Jeremy Daniel, a process server with Guaranteed Subpoena Service, Inc., left copies of the Summons, Complaint, Certificate of Financially Interested Parties, Order for Conference and Judges Procedures at B. Hartmann's dwelling house, located at 1371 Ken Peddy Court, Batavia, IL 60510, with a person of suitable age and discretion, specifically B. Hartmann's wife, Mary Hartmann, on April 14, 2009 at 2:02 p.m. Absent the submission of any competent summary judgment evidence to the contrary, B. Hartman's bald assertion, without more, is insufficient to demonstrate defective service in this instance.

Additionally, T. Hartmann claims that he was served approximately seven months after this case was filed. As a consequence, he argues that this case should be dismissed due to FFCI's failure to effect service on him within 120 days after its complaint was filed as required by the Rules. This Court does not agree. Rule 4(m) requires a court "to extend the time for service for an appropriate period" if a plaintiff demonstrates "good cause" for its failure to effect timely service. Fed. R. Civ. P. 4(m). "When service of process is challenged, the serving party

bears the burden of proving its validity or good cause for failure to effect timely service." *Sys. Signs Supplies v. U.S. Dep't of Justice, Wash. D.C.*, 903 F.2d 1011, 1013 (5th Cir. 1990) (internal citations omitted). Here, the record establishes that on at least two occasions, FFCI informed the Court of its numerous attempts to obtain service on T. Hartmann and its inability to do so. As a result, it requested and was granted three continuances in order to properly serve T. Hartmann. Because service was completed within the allotted time frame given, this Court determines that "good cause" existed for FFCI's failure to effect service on T. Hartmann within the 120-day period required by the Rules. In light of the foregoing, the Court finds that service of process on T. Hartmann was proper; thus, the defendants' motion to dismiss in this regard is denied.

### B. Whether FFCI's Public Sales Were Commercially Reasonable?

The applicable law provides that when a debtor defaults, a secured party, such as FFCI, is permitted to sell "or otherwise dispose of any or all of the collateral in its present condition." 810 Ill. Comp. Stat 5/9-610(a); *accord* Tex. Bus. & Com. Code §9.610(a). However, "[e]very aspect of [the] disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." 810 Ill. Comp. Stat 5/9-610(b); Tex. Bus. & Com. Code §9.610(b). When disposing of collateral, a secured party is required to make certain that the debtor is given proper notice of the anticipated disposition and that the disposition is commercially reasonable. *See First Nat'l Bank of Decatur v. Wolfe*, 137 Ill.App.3d 929, 933 – 34, 92 Ill. Dec. 491, 485 N.E.2d 46, 48 - 49 (1985); *Fed. Deposit Ins. Corp. v. Lanier*, 926 F.2d 462, 464 (5th Cir. 1991). The Security Agreement entered into by FFCI and Express further delineates what disposition-related actions will be deemed commercially reasonable and provides as follows:

> Debtor agrees that any public or private sale shall be deemed commercially reasonable (i) if notice of any such sale is mailed to Debtor (at the address for Debtor specified herein) at least ten (10) days prior to the date of any public sale or after which any private sale will occur; (ii) if notice of any public sale is published in a newspaper of general circulation in the county where the sale will occur at least once within the ten (10) days prior to the sale; (iii) whether the items are sold in bulk, singly, or in such lots as Secured Party may elect; (iv) whether or not the items sold are in Secured Party's possession and present at the time and place of sale; and (v) whether or not Secured Party refurbishes, repairs, or prepares the items for sale. Secured Party may be the purchaser at any public sale. In all cases, Debtor shall be liable for any deficiency due and owing to Secured Party after any public or private sale . . . .

(Dkt. Entry No. 18, Ex. 2, ¶ 8.).

Here, the defendants challenge the commercial reasonableness of FFCI's public sales. Specifically, they allege that FFCI did not sell all of the assets that they took control of, that it mismanaged control of such assets and that in addition to the standard equipment pool of collateral, there was an additional two hundred plus units that were free and clear of any debt. Thus, they assert that FFCI's continued pursuit of monetary damages is without merit. Nevertheless, this Court determines, after a thorough examination of the record before it, that a summary judgment that the public sales were commercially reasonable is warranted because FFCI has demonstrated that not only was proper notice of its public sales given to the defendants, as secondary obligors, but all aspects of each sale was commercially reasonable. The defendants have failed to tender any evidence to the contrary.

### 1. Was FFCI's Notice of Disposition Sufficient?

With respect to the type of notice required to be given upon a secured party's disposition of collateral, applicable statutes insist only that the secured party send "a reasonable authenticated notification of [the] disposition" to the debtor and/or any secondary obligor. 810 Ill. Comp. Stat. 5/9-611(b); *accord* Tex. Bus. & Com. Code § 9.611(b), (c). "[P]roof of 'actual receipt'" of the notification by the debtor, however, is not required. *General Motors Acceptance*

*Corp. v. Stoval*, 374 Ill.App.3d 1064, 1074, 872 N.E.2d 91, 100, 313 Ill. Dec. 331, 340 (Ill. App. 1 Dist. 2007) (citing *Ryder v. Bank of Hickory Hills,* 242 Ill.App.3d 1045, 1048, 183 Ill. Dec. 762, 612 N.E.2d 19 (1993)); *MBank Dallas, N.A. v. Sunbelt Mfg., Inc.*, 710 S.W.2d 633, 635 - 36 (Tex. App.-Dallas 1986). Rather, "[t]o send a reasonable notice, the notification [need only] be deposited in the mail with postage prepaid and properly addressed." *General Motors Acceptance Corp.*, 374 Ill.App.3d at 1074, 313 Ill. Dec. 331, 872 N.E.2d at 100 (quoting *Ryder*, 242 Ill.App.3d at 1048, 183 Ill. Dec. 762, 612 N.E.2d 19 at 23; 810 ILCS 5/1-201(38) (West 2002)); *Fin. Fed. Credit Inc. v. Dinardo*, No. H-05-0313, 2006 WL 734391, at *4 – 5 (S.D. Tex. Mar. 22, 2006). The applicable statutes also denote that the contents and form of the notification are adequate if the notification contains the following information:

> (A) describes the debtor and the secured party;
> (B) describes the collateral that is the subject of the intended disposition;
> (C) states the method of intended disposition;
> (D) states that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and
> (E) states the time and place of a public disposition or the time after which any other disposition is to be made.

810 Ill. Comp. Stat. 5/9-613(1); *accord* Tex. Bus. & Com. Code § 9.613(1).

FFCI has established that it satisfied its statutory and contractual notice obligations in this case and the defendants have failed to proffer any evidence establishing otherwise. The record discloses that it notified the defendants of the public sales by properly addressed, postage prepaid, correspondence dated September 10, 2009, sent to their last known addresses, as indicated in the parties agreements, by both first class and certified mail, return receipts requested, more than ten days prior to the anticipated sale dates. Such notices were mailed to B. Hartmann at the following last known addresses referenced in the parties' agreements: 540 West Galena Blvd., Aurora, IL, 60506 and 1371 Ken Peddy Ct., Batavia, IL 60510. Likewise, notices

were mailed to T. Hartmann at: 7575 Pelican Bay Blvd. #1403, Naples, FL 34108; 1999 Downer Place, Aurora, IL 60506, c/o Tom Streit; and 540 West Galena Blvd., Aurora, IL, 60506, and to Freight at 540 West Galena Blvd., Aurora, IL, 60506. In addition, notices of the public sales satisfying the statutory content and form requirements were published in newspapers in each county where each respective sale was set to occur at least once ten days prior to the date of each sale. Specifically, the notices were posted in the following publications on the dates listed: *The Jackson Citizen Patriot* – Sept. 20, 2009; *The Goshen News* – Sept. 19, 2009; *St. Louis Business Journal* – Sept. 18, 2009; *The East St. Louis Monitor* – Sept. 17, 2009; The Tribune Star – Sept. 21, 2009, Sept. 28, 2009, and Oct. 5, 2009; *The Ledger-Sentinel* – Sept. 17, 2009; *The News Tribune* – Sept. 25, 2009; *Truckpaper.com* – Sept. 18, 2009; and *The Barberton Herald* – Sept. 17, 2009. Further, FFCI sent notice of the public sales via certified mail, return receipt requested and/or first class mail to other potentially interested parties. Accordingly, the Court finds that FFCI has demonstrated that it sent "reasonable authenticated" notice of its anticipated disposition, sufficiently satisfying the statutory contents and form requirements, to the debtor and the defendants, as secondary obligors, at least ten days prior to its public sale dates.

### 2. Whether All Aspects of FFCI's Disposition Were Commercially Reasonable?

The defendants do not dispute that the sales' locations were accessible or that FFCI made the equipment available for inspection prior to the sales. Instead, they appear to insinuate that the public sales were not commercially reasonable due to FFCI's inability to sell the equipment for more favorable pricing and/or obtain a complete recovery. The defendants have not specifically stated why they believe FFCI's selling price was too low, beyond their unsupported assertion that Gary Pace, FFCI's Vice-President, told two of T. Hartmann's sons that "the collateral (roughly 380 trailers) was going to be more than adequate to cover the debt" and that

FFCI would "make money on [the] deal." Indeed, this allegation, without more, does not constitute competent summary judgment evidence sufficient to demonstrate that the public sales were commercially unreasonable.

"The fact that a greater amount could have been obtained by a . . . disposition . . . at a different time or in a different method from that selected by the secured party is not in itself sufficient to preclude [a] secured party from establishing that the . . . disposition . . . was made in a commercially reasonable manner." 810 Ill. Comp. Stat. 5/9-627(a); *accord* Tex. Bus. & Com. Code § 9.627(a). In fact, "[i]f the secured party either sells the collateral in the usual manner in any recognized market [] or if [it] sells at the price current in such market at the time of [its] sale or if [it] has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold [it] has sold in a commercially reasonable manner." *Boender v. Chicago N. Clubhouse Ass'n, Inc.*, 240 Ill.App.3d 622, 628, 608 N. E.2d 207, 212 (Ill. App. 1 Dist. 1992); *Siboney Corp. v. Chicago Pneumatic Tool Co.,* 572 S.W.2d 4, 8 (Tex. Civ. App.-Houston [1st Dist.] 1978, writ ref'd n.r.e.) ("The fact that a better price could have been obtained does not render the sale commercially unreasonable."); *see also* 810 Ill. Comp. Stat. 5/9-627(b); *accord* Tex. Bus. & Com. Code §9.627 (b).

In the case *sub judice*, FFCI has submitted evidence that it sold the collateral at the public sales for an aggregate price of $1,711,250. As support for its contention that all aspects of its public sales were commercially reasonable, FFCI has proffered the affidavit of Gary L. Pace, its Vice-President and branch manager of its Chicago office. Pace declares that he has over twenty-three years of experience in the equipment finance business and that he is intimately familiar with Express' accounts with FFCI. Based on his years of experience, numerous sales conducted, arranged and/or supervised and his observations of sales conducted by others, Pace states that, in

his opinion, the public sales of the equipment were conducted in accordance with industry standards and were commercially reasonable in all respects, including method, manner, time, place and terms. With regard to the sales prices associated with the equipment sold, Pace avers that such prices were selected through research and ultimately approved by him. Specifically, he asserts that in determining how much FFCI would bid at the public sales, he reviewed photographs of the equipment and discussed the condition of each item with FFCI personnel who had inspected the equipment per his instructions because maintenance records were unavailable. Additionally, he indicates that he consulted various pricing resources, including dealers of similarly-situated equipment and three websites commonly consulted by buyers, sellers, banks and equipment appraisers for equipment in kind. He further states that based on the condition of the equipment at the time of the public sales and the pricing information obtained from the resources he consulted, the sales prices of the equipment represented the equipment's fair market value as of the date of the public sales. Finally, he states that FFCI sold the equipment at the public sales for an aggregate price of $1,711,250, and that the expenses for advertising, preparing for and conducting the seven public sales totaled $206,826.81. In light of this evidence and the defendants' failure to present competent summary judgment evidence demonstrating that procedural irregularities occurred during the course of the public sales or that the price obtained for the equipment at the public sales was unreasonably low when compared to equipment in kind, the Court determines that a summary judgment that the public sales were commercially reasonable is appropriate.

   **C. Whether the Defendants Are Liability for the Deficiency Owed, Interest and Attorneys' Fees**

  Section 9.615(d) permits obligors, such as the defendants, to be held liable for any deficiency owed after the collateral has been lawfully disposed of and the associated proceeds

have been applied to the outstanding debt. *See* 810 Ill. Comp. Stat. 5/9-615(d)(2); Tex. Bus. & Com. Code § 9.615(d)(2). Moreover, the guaranties at issue in this case provide that the defendants, as guarantors, are directly and unconditionally liable to FFCI for the payment and performance of all of Express' obligations to FFCI, including interest, reasonable costs, and attorneys' fees incurred by FFCI. Particularly, the guaranties state, in pertinent parts, as follows:

> Understanding that in reliance upon the following covenants and agreements, financial accommodations as set forth above will be provided by [FFCI] to or for the benefit of [Express], [Defendants] hereby covenant[] and agree[]: . . . (b) that [their] liability to [FFCI] hereunder is direct and unconditional and may be enforced against [them] without prior resort to any other right, remedy, security and shall continue notwithstanding any repossession or other disposition of security regardless of whether same may be an election of remedies against [FFCI]; (c) that [their] liability to [FFCI] hereunder shall not be released, impaired, or satisfied for any reason until all obligations of [FFCI] have been fully paid and performed, with interest; (d) to pay [FFCI's] reasonable attorneys' fees not to be less than 20% of the outstanding Obligations[] if [FFCI] refer[s] [] Guarant[ies] to any attorney for enforcement; (e) that, at [FFCI's] sole option and without notice, any and all of [Defendants'] obligations hereunder shall become immediately due and payable in the event that [Defendants] or [Express] shall become insolvent, make an assignment for the benefit of creditors, or become the subject . . . of any petition, case or proceeding under any state or federal bankruptcy, reorganization or insolvency law; and (f) that this is a continuing guaranty which shall remain in full force and effect . . . until full payment and performance of all Obligations . . . .

Based on the foregoing, FFCI seeks: (1) the principal amount of $4,012,233.75; (2) attorneys' fees and expenses in the amount of $62,694.81 as of January 31, 2010; (3) "pre-judgment interest at the contractual rate of eighteen percent (18) per annum in the amount of $397,705.80 from October 2, 2009 to April 21, 2010"; and (4) "additional pre-judgment interest at the contractual rate of eighteen percent (18) per annum at the rate of $1,978.64 per day from April 21, 2010, until entry of judgment, post-judgment interest at the rate of eighteen percent (18) per annum from entry of judgment until paid."

The Court determines that, as a matter of law, the uncontroverted evidence entitles FFCI to summary judgment in the principal amount of $4,012,233.75, and attorneys' fees and

expenses in the amount of $62,694.81 as of January 31, 2010. However, a lack of clarity remains as to the rate of prejudgment interest it seeks as its claims for interest appear inconsistent with the language governing the parties' agreements.[4] Therefore, the Court directs FFCI to justify its entitlement to the prejudgment interest it seeks in light of the language contained in the parties' agreement.

## VI.   CONCLUSION

Because the defendants have failed to produce evidence sufficient to create a genuine issue of material fact on FFCI's claim, FFCI's motion for summary judgment is GRANTED. FFCI, nevertheless, is directed to provide this Court with verifiable evidence justifying its entitlement to prejudgment interest at the rate it seeks.

It is so ORDERED.

SIGNED at Houston, Texas this 24th day of November, 2010.

_____
Kenneth M. Hoyt
United States District Judge

---

[4] The Guaranties dated March 1, 1991, provide that the law of the state of residence or principal place of business of the guarantors shall govern the parties' agreements. (*See* Dkt. Entry 18, Exs. 3 & 4.) However, the Guaranties dated September 30, 2005, provide, the following:

> THIS GUARANTY AND ALL DOCUMENTS EXECUTED IN CONNECTION HEREWITH SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF GUARANTOR'S LOCATION AS SET FORTH IN THIS AGREEMENT, OR, IF ONE OR MORE OF THE TERMS OF THIS GUARANTY WOULD BE INVALID OR UNENFORCEABLE UNDER THE LAWS OF SUCH STATE, THE LAWS OF THE STATE OF [FFCI's] LOCATION AS SET FORTH IN THIS AGREEMENT.

(*Id.*, Exs. 6 – 8.) It is undisputed that the Guarantors' location as set forth in the parties' agreements is the state of Illinois. As such, it appears that Illinois law, rather than Texas law, governs FFCI's rate of interest. *See* 735 Ill. Comp. Stat. 5/2-1303.